812 A.2d 587

**Kevin CHOW, a Minor, by and through his parents
and natural guardians, Chi CHOW and Jenny
Chow, and in their own right,**

**v.**

**Bruce J. ROSEN, M.D., Deborah Bieter Schultz, M.D., Jerome B. Goldstein, M.D., Penn Women's Health Associates, P.C. and Pennsylvania Property and Casualty Insurance Guaranty Association, Intervenor.**

**Appeal of Independence Blue Cross.**

Supreme Court of Pennsylvania.

Argued April 8, 2002.

Decided Dec. 19, 2002.

Michael Joseph Laffey, Richard B. Tucker, Pittsburgh, for Independence Blue Cross.

Paul J. Gitnik, Pittsburgh, for Highmark/Capital Blue Cross/Hospital Service of NE PA.

Lise Luborsky, Philadelphia, for PA Property & Casualty Insurance Guaranty Association.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Chief Justice ZAPPALA.

We granted allowance of appeal to consider whether a common pleas court presiding over settlement of a medical

malpractice claim involving a minor plaintiff properly disallowed intervention by a subrogee health insurance provider based upon application of the non-duplication of recovery provision of the Pennsylvania Property and Casualty Insurance Guaranty Association Act. For the reasons set forth herein, we affirm.

The underlying civil proceedings were initiated in 1995 by plaintiffs Kevin Chow, a minor, and his parents, who filed a complaint alleging medical malpractice against several physicians and affiliated organizations resulting in severe and permanent central nervous system injuries to Kevin during birth. Appellant, Independence Blue Cross, a Pennsylvania nonprofit hospital plan corporation,[1] paid medical benefits totaling $47,947 on behalf of the minor plaintiff for the treatment of his injuries, affording it a subrogation interest in recoveries against the defendants. All defendants except Bruce J. Rosen, M.D., were eventually dismissed from the proceedings. Dr. Rosen was insured by Physicians Insurance Company ("PIC") for $200,000 of primary insurance coverage and the Pennsylvania Medical Professional Liability Catastrophe Fund (the "CAT Fund"),[2] for $1,000,000 in excess coverage. In January of 1998, however, the Commonwealth Court entered an order placing PIC in liquidation in accordance with the liquidation provisions of the Insurance Department Act, 40 P.S. §§ 221.1–221.63; such order triggered certain statutory obligations on the part of Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA" or "the Association"), pursuant to the Pennsylvania Property and Casualty Insurance Guaranty Association Act.[3] Of particular relevance

1. Nonprofit hospital plans such as the one maintained and operated by Independence Blue Cross provide hospitalization and related health benefits to plan subscribers for a fee. *See* 40 P.S. § 6101.

2. In relation to the settlement, the CAT Fund served as a non-party statutory excess carrier pursuant to the Healthcare Services Malpractice Act, 40 P.S. §§ 1301.101–1301.1006 (superseded). *See* 40 P.S. § 1301.701(d) (superseded).

3. Act of December 12, 1994, P.L. 1005, No. 137 § 1 (as amended, 40 P.S. §§ 991.1801–991.1820) (the "PPCIGA Act"). This legislation superseded the former Pennsylvania Insurance Guaranty Association Act, Act of Nov. 25, 1970, P.L. 716, No. 232 (as amended 40 P.S.

here, PPCIGA became obligated pursuant to its enabling statute to pay "covered claims" against Dr. Rosen, subject to a $300,000 cap. *See* 40 P.S. § 991.1803.

After a pretrial conference in October of 1998, the Chows filed a petition to compromise, asserting that they had agreed to release Dr. Rosen in exchange for $1.1 million, which amount included, in addition to a substantial payment from the CAT Fund, the primary coverage limits attributable to Dr. Rosen's insurance policy with PIC. The settlement, however, expressly contemplated an offset against the settlement proceeds of the medical benefits paid by Independence Blue Cross ($47,947.32). Such adjustment was ostensibly made available under the non-duplication of recovery provision of the PPCIGA Act, 40 P.S. § 991.1817, which prescribes that "[a]ny amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance." [4]

Upon learning of the agreement, Independence Blue Cross sought to intervene in the malpractice action to protect its subrogation interest, and PPCIGA sought intervention to oppose that of Independence Blue Cross. The common pleas court granted PPCIGA's petition to intervene, denied Independence Blue Cross's petition, and approved the proposed settlement. A panel of the Superior Court affirmed in a memorandum opinion, concluding that, although Independence Blue Cross would ordinarily have had a right to intervene, the non-duplication of recovery provision of the PPCIGA Act

§§ 1701.101–1701.605), which was the enabling legislation for PPCIGA's predecessor, the Pennsylvania Insurance Guaranty Association ("PIGA").

4. The full text of the non-duplication of recovery provision is as follows:
   Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.
   40  P.S. § 991.1817(a).

barred it from any recovery against the Chows and supported the disallowance of intervention. We agree.

In *Bell v. Slezak,* 571 Pa. 333, 812 A.2d 566 (2002), a majority of this Court concluded that a third-party claimant, such as the Chows, only recourse for the funding of a settlement agreement, where, as here, a defendant physician's malpractice insurer becomes insolvent, is by way of the PPCIGA Act. Specifically, we concluded that PPCIGA is obligated to pay covered claims of such third-party beneficiaries unless the Act provides for a set-off by way of the non-duplication of recovery provision.[5] Moreover, in *Bell,* we agreed with the Superior Court's observation that this conclusion necessarily extinguishes the subrogation interest of the third-party beneficiary's carrier, which paid the other source of insurance to which the offset was applied. We stated:

As noted, the Superior Court considered the potential subrogation interest of the Bells' health insurance carrier Capital Blue Cross and Blue Shield in this regard and concluded that such interest was foreclosed as it was derivative of the Bells' interest. The court noted that a subrogee has no greater rights than those held by the subrogor, thus, the subrogee is limited to recovering in subrogation the amount received by the subrogor relative to the claim paid by the subrogee.

*Bell,* 571 Pa. 347, 812 A.2d at 574.

Applying *Bell* here, we must conclude, as did the lower courts, that Independence Blue Cross was not entitled to intervene in the matter to assert its subrogation interest as that interest was necessarily extinguished by the application of the non-duplication of recovery provision to the Chows' "covered claim." This conclusion is consistent with the stated purposes of the PPCIGA Act, which are to provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants

5. Here, the lower courts properly applied the non-duplication of recovery provision to the amount PPCIGA was obligated to pay as part of the settlement and offset the $47,947.32 paid by Independence Blue Cross to the Chows.

or policyholders as a result of the insolvency of an insurer. 40 P.S. § 991.1801(1). Further, as we stated in *Bell*:

> The Act clearly attempts to protect both policyholders and those with claims against policyholders from the consequences of the insolvency of the insurer by establishing an association, the sole purpose of which is to compensate those who have claims which have not been paid because the insurance company is insolvent. The association is funded by assessing a fee against all member insurers, and every insurer is required to be a member as a condition of its authority to write property and casualty policies. 40 P.S. §§ 991.1803(a), (b)(3), and 991.1808. In this manner, the risk of loss due to the insolvency of any one insurer is spread out over all member insurance companies and their policyholders. *Id.* at § 991.1810. In effect, every time PPCIGA pays a claim, every member insurance company is paying part of the claim. The Act therefore seeks to lessen the financial burden on the insurance industry by preventing duplication of recovery.

*Bell,* 571 Pa. 347, 812 A.2d at 574 (citing *Panea v. Isdaner,* 773 A.2d 782, 790 (Pa.Super.2001)). Accordingly, we held that "if any loss can be said to have occurred, it is the solvent insurers who paid plaintiffs' claims under the other source of insurance, which the Act requires to be exhausted first." *Bell,* 571 Pa. 346, 812 A.2d at 574 (quoting *Panea,* at 791).

In light of the foregoing and the reasoning of *Bell,* we affirm the decision and order of the Superior Court.

Justice SAYLOR files a dissenting opinion in which Justice NIGRO joins.

SAYLOR, Justice, dissenting.

In *Bell v. Slezak,* 571 Pa. 333, 812 A.2d 566 (2002), I have set forth the position that the PPCIGA Act does not bar a medical malpractice plaintiff's claim against a defendant-physician or foreclose liability, and that the non-duplication of recovery provision does not relieve PPCIGA of its payment obligation in relation to the doctor's covered claim. *See id.* at 355, 812 A.2d at 578–79 (Saylor, J., dissenting). The support-

ing rationale centers upon the nature of the parties' claims under the PPCIGA Act—PPCIGA possessed a complete defense against direct payment on the plaintiffs' potential third-party claim, *see id.* (citing 40 P.S. § 991.1803(b)(2)); however, it had no such defense against the doctor's first-party claim predicated upon his insurance contract with PIC. *See id.*

Applying this reasoning to the present case, the orders of the Superior Court and the common pleas court should not be sustained. The common pleas court simply should not have denied the subrogee, Independence Blue Cross, leave to intervene or approved a settlement that was designed to extinguish the insurer's rights, particularly where the plaintiffs' cause against Dr. Rosen for the medical expenses attributable to Independence Blue Cross should remain viable. *See Bell,* 571 Pa. at 348–355, 812 A.2d at 578–79 (Saylor, J., dissenting). While the decision to permit a reduction of settlement proceeds based upon an unsettled legal theory may generally be within the prerogative of the parties to the litigation, Pennsylvania courts frown on attempts to utilize the settlement process as a mechanism to defeat subrogation interests. *See, e.g., Thompson v. WCAB,* 801 A.2d 635, 639 (Pa.Cmwlth.2002).

Justice NIGRO joins this dissenting opinion.