**UNIVERSAL UNDERWRITERS INSURANCE CO., a/s/o Watson Chevrolet Oldsmobile and Motors Insurance Corporation a/s/o Watson Chevrolet Oldsmobile, Appellants**

v.

**A. RICHARD KACIN, INC., Masco Interiors, Inc., Bassett Masonry, Inc., Beacon Construction Company, Inc., and Priester Glass & Mirror, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 19, 2006.

Filed Jan. 11, 2007.

Steven N. Cherry, Philadelphia, for appellants.

John L. Kwasneski, Pittsburgh, for Bassett, appellee.

Stuart H. Sostmann, Pittsburgh, for Kacin, appellee.

BEFORE: STEVENS, TODD, and McCAFFERY, JJ.

OPINION BY TODD, J.:

¶ 1 In this appeal, we are asked to construe the meaning of a waiver of subrogation clause contained in a standard

American Institute of Architects ("AIA") agreement and its effect on the subrogation action brought by Appellants Universal Underwriters Insurance Co. and Motors Insurance Corporation against Appellees A. Richard Kacin, Inc. ("Kacin"), Masco Interiors, Inc., Bassett Masonry, Inc. ("Bassett"), Beacon Construction Company, Inc., and Priester Glass & Mirror. Because we find that the waiver of subrogation clause precludes Appellants' negligence and breach of contract claims against Appellees, we affirm.

¶ 2 Kacin and Bassett were the general contractor and subcontractor, respectively, for construction work performed at Watson Chevrolet Oldsmobile ("Watson") in 1999 pursuant to a standard AIA construction contract entered into between Kacin and Watson. Appellants allege that, due to the contractors' negligent construction, a rainstorm in 2002 caused the collapse of a wall of Watson's dealership. Under their commercial property insurance policies with Watson, Appellants paid for the damage, less the policy deductibles. In 2003, they brought the instant subrogation action against Kacin, Bassett, and the other subcontractors on the construction project alleging negligence and breach of contract, and seeking reimbursement for payments made under the property insurance policy for the property damage sustained by Watson, plus the uninsured deductible amounts.[1] Kacin and Bassett filed separate answers to Appellants' amended complaint.

¶ 3 Thereafter, Kacin filed a motion for partial summary judgment, which Bassett joined, asserting that the waiver of subrogation provision contained in the construction contract barred Appellants' subrogation action.[2] That provision provides:

**11.3.7 Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

---

1. The claims against the other subcontractors—Masco Interiors, Inc., Beacon Construction Company, Inc., and Priester Glass & Mirror—were either voluntarily discontinued (*see* Voluntary Discontinuance as to Masco Interiors, Inc., Only, 11/09/04; Order of Court, 12/08/04 (discontinuing claims against Bea-con Construction Company Inc.)), or disavowed by Appellants. (*See* Appellants' Brief at 9 n. 2)

2. The motion did not address the additional claims for the uninsured policy deductibles.

(General Conditions of the Contract for Construction incorporated into Standard Form of Agreement Between Owner and Contractor[3] (Exhibit A to Kacin's Motion for Partial Summary Judgment and Brief in Support) (hereinafter "General Conditions"), at 21 (R.R. 385a).)[4]

■ ¶4 The trial court found that the waiver of subrogation provision was enforceable under this Court's decision in *Penn Avenue Place Assoc., L.P. v. Century Steel Erectors, Inc.*, 798 A.2d 256 (Pa.Super.2002), and so, by order dated February 15, 2005, the court granted the motion for partial summary judgment filed by Kacin and Bassett. Following settlement of the remaining claims between the parties regarding the policy deductibles,[5] Appellants filed this appeal.[6]

3. The contract entitled "Standard Form of Agreement Between Owner and Contractor", AIA Form Document A111, explicitly incorporated by reference the document entitled "General Conditions of the Contract for Construction," AIA Form Document A201.

4. A corollary provision in the construction contract provides as follows:

11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, adjoining or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.
(General Conditions at 21 (R.R. 385a).)

5. The trial court granted the partial summary judgment motion of Kacin and Bassett on February 15, 2005. An appeal of that order was quashed by this Court as interlocutory. In its November 14, 2005 order, the trial court indicated that the remaining claims between the parties concerning the policy deductibles not disposed of by the grant of partial summary judgment were resolved through a settlement agreement and, accordingly, expressly incorporated the February 15 order as a final order.

¶5 Our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court

6. We note that Appellants' Statement of the Questions Involved violates the mandates of Rule 2116 of the Pennsylvania Rules of Appellate Procedure by spanning two pages in direct contravention to the rule, which states "[i]t should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception." Pa.R.A.P. 2116(a) (emphasis added). Although double-spaced, Appellants' statement exceeds 30 lines. (*See* Appellants' Brief at 4–5.) We also note that Appellants violated Rule 2119 in that the argument section of their brief is not divided into sections corresponding to each of their questions presented. Although it is within this Court's power to quash an appeal for clear violations of the Rules of Appellate Procedure, *see Commonwealth v. Stafford*, 749 A.2d 489, 493 (Pa.Super.2000), because Appellants' brief is not so defective as to preclude effective appellate review, we will not quash their appeal.

committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 6 Furthermore, when construing the language of an insurance policy, our goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100 (1999). If the language is not clear, it is construed in favor of the insured, but where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Id.; Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Contractual terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co.,* 557 Pa. at 606, 735 A.2d at 106.

¶ 7 Initially, we note that several of the issues which Appellants raise on appeal are waived. Appellants assert, *inter alia,* that the trial court erred in granting partial summary judgment because (1) the trial court's interpretation of the waiver of subrogation provision in the contract conflicts with the provision requiring the contractor to purchase his own insurance (section 11.1.1) and with the indemnification provision (section 3.18.1); (2) the waiver of subrogation clause is not applicable where the loss occurred after the contract work was completed; and (3) the waiver of subrogation clause is not applicable where the loss was incurred, not due to an insured "peril," but because of Appellees' negligence. Appellants also argue that the trial court erred in granting partial summary judgment to Bassett because Bassett did not raise the waiver of subrogation provision as an affirmative defense in its answer to Appellants' amended complaint.

¶ 8 Each of these arguments is waived, however, because Appellants failed to assert them below as bases for denial of Appellees' motion for partial summary judgment. Our caselaw is clear that, in defending against a motion for summary judgment, the non-moving party's "decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not." *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. P'ship,* 764 A.2d 1100, 1105 (Pa.Super.2000); *see also Walsh v. Borczon,* 881 A.2d 1, 6 (Pa.Super.2005) (citing *Harber*). Finding these issues to be waived, we now address Appellants' issues which have been preserved for our review.

¶ 9 Appellants argue generally that the trial court's reliance on *Penn Avenue, supra,* to conclude that the waiver of subrogation provision in this case is enforceable is misplaced. In *Penn Avenue,* an insurer who, pursuant to a property insurance policy, paid for fire damage caused by a contractor's alleged negligence on the insured's worksite brought a subrogation action against the contractor, seeking reimbursement for its outlays under the policy. The trial court in *Penn Avenue* found that a waiver of subrogation clause nearly identical to that in the instant case barred the suit.

¶ 10 On appeal, this Court rejected the insurer's claim that enforcement of the clause was against public policy because the contractor's actions violated ordinances and/or regulations enacted for the protection of the public. In so holding, we rejected the insurer's contention that the waiver provision was akin to an indemnification clause asserted to indemnify a tortfeasor for his own negligence:

> The case at hand is not analogous to indemnification clauses where the in-

demnitee is the tortfeasor. [Trial Court Opinion] at 7. In finding the waiver of subrogation clause valid and not void as against public policy, the trial court stated:

> [A] waiver of subrogation clause, such as the one at issue here, does not invoke public policy concerns because it does not attempt to transfer liability for negligence away from the tortfeasor. Rather, the tortfeasor who obtains insurance coverage to pay claims for which he is liable does not, *ipso facto,* transfer liability away from himself to the other party to the clause in question. He *satisfies* his debt to that party. The public policy concerns regarding indemnification for one's own negligence are therefore not an issue here. Waivers of subrogation are a matter of contract.

*Id.* We agree with the trial court and affirm on this basis. The subrogation waiver clause is enforceable.

*Penn Avenue,* 798 A.2d at 259 (emphasis original). We specifically noted, however, that the insurer therein did not contend that the waiver clause should not be enforced because the insurer lacked notice of it, or that "a waiver of subrogation clause in a contract is generally unenforceable, or should not be enforced in appropriate circumstances." *Id.*

¶ 11 Contrary to Appellants' claims, we find that *Penn Avenue* holds that waiver of subrogation provisions are unobjectionable, if only in the context of the challenges raised in that case. Appellants, however, raise challenges to the waiver provision not addressed in *Penn Avenue.*

¶ 12 Appellants first argue that the trial court erred in granting partial summary judgment because, under the trial court's interpretation of the waiver of subrogation provision, the provisions of the contract warranting that the contracting work would conform to the plan documents—sections 3.5.1[7] and 4.3.5[8]—would be rendered superfluous and/or ambiguous. They assert:

> Clearly, such provisions demonstrate an intent of the parties to keep the burden of loss arising from Kacin and/or Bassett's negligence with Kacin and/or Bassett and their insurers, regardless of section 11.3.7 of the General Conditions. All of these contractual provisions can be read in harmony to indicate that the parties intended subrogation to be

---

7. Section 3.5.1 of the contract provides:

   The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

   (General Conditions, at 8 (R.R. 372a).)

8. Section 4.3.5 of the contract provides:

   **Waiver of Claims: Final Payment.** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

   \* \* \*

   .2 failure of the Work to comply with the requirements of the Contract Document; or

   .3 terms of special warranties required by the Contract Documents.

   (General Conditions, at 12 (R.R. 376a).)

waived **only** in cases where there was no negligence on the part of Kacin/Bassett and not for claims of negligence or breach of warranty.

(Appellants' Brief at 31 (emphasis original).)

¶ 13 We find no ambiguity or conflict resulting from the trial court's interpretation of the waiver of subrogation provision. Under section 11.3.7, Watson waived the right of subrogation for "damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to" the contract. *Penn Avenue* instructs that such a clause is enforceable whether or not such waiver relates to the contractor's own negligence. *See Penn Avenue*, 798 A.2d at 259. The warranty and related provisions of sections 3.5.1 and 4.3.5 can be read to provide contractual remedies only where Watson's alleged damages are not covered by such property insurance. Thus, the provisions may be read in accord with one another. *See AK Steel Corp. v. Viacom, Inc.*, 835 A.2d 820, 824 (Pa.Super.2003) (Contracts are best read as a whole and "clauses seemingly in conflict [should be] construed, if possible, as consistent with one another. Terms in one section of the contract should not be interpreted in a manner which nullifies other terms." (internal quotation marks and citation omitted).)

■ ¶ 14 Appellants next contend that the waiver of subrogation provision is not enforceable because "they were not parties to the contract and there was no evidence presented that they had notice of the provisions or consented to the provisions." (Appellants' Brief at 37.) The trial court dismissed this contention, finding only that "[n]otice issue deemed irrelevant." (Order, 2/14/05.) Upon review, we find that

the question of whether a waiver of subrogation provision may be enforced against an insurer/subrogee where the insurer was not a party to the agreement, and in the absence of the insurer's notice or consent, is a matter of first impression for the appellate courts of this Commonwealth.[9] For the following reasons, we reject Appellants' contention that their notice or consent was required to enforce the waiver of subrogation provision.

■ ¶ 15 Subrogation is an equitable doctrine involving the right of legal substitution which is granted "as a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it, and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another." *Panea v. Isdaner*, 773 A.2d 782, 791 (Pa.Super.2001) (internal quotation marks omitted), *aff'd, Bell v. Slezak*, 571 Pa. 333, 812 A.2d 566 (2002); *see also Kiker v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 742 A.2d 1082, 1086 (Pa.Super.1999) (citations omitted) (the goal of subrogation is "to place the burden of the debt upon the person who should bear it." (internal quotation marks omitted).) Thus,

> through subrogation the insurer is granted the right "to stand in the shoes of the claimant and assert the claimant's rights against the tortfeasor." ... [T]he insurer, as subrogee, can only recover damages when his subrogor has a legally cognizable cause of action against a third party, making the right to subrogation contingent on [the subrogor] having a cause of action against a known tortfeasor.

9. As we noted above, in *Penn Avenue, supra,* this Court explicitly stated that the insurer's notice of the subrogation provision in that case was not an issue. *Penn Avenue,* 798 A.2d at 259.

*Kiker*, 742 A.2d at 1086 (citations omitted); *see also Chow ex rel. Chow v. Rosen*, 571 Pa. 369, 373, 812 A.2d 587, 590 (2002) (a subrogee has no greater rights than those held by the subrogor); *Insurance Co. of North America v. Carnahan*, 446 Pa. 48, 50, 284 A.2d 728, 729 (1971) (same).

¶ 16 As noted above, however, we find the issue of whether a waiver of subrogation provision is enforceable against one who was not a party to the contract, had no notice of the provision, and did not consent to it appears to be a question of first impression for the appellate courts of this Commonwealth; accordingly, we look to other jurisdictions for guidance.

¶ 17 The decisions of state appellate courts which have addressed this issue are split. Some states have concluded that it is inequitable to bind an insurer to an agreement it did not join, and thus require notice or consent of the insurer. *See, e.g., Lopez v. Concord General Mut. Ins. Group*, 155 Vt. 320, 583 A.2d 602, 605 (1990) (because subrogation has "particular approval" under Vermont law, concluding that "a waiver of a subrogation right will be found only where the subrogated party has specifically and unequivocally relinquished that right"); *St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp.*, 275 N.W.2d 304, 308 (N.D.1979) ("A waiver of the right of subrogation must be by an act of the subrogee; it cannot be contracted away by the conduct or agreement of third parties.") These states generally view subrogation as a right of the insurer, a right which can only be waived knowingly.

¶ 18 Other states view the right to subrogation as dependent entirely on the viability of the insured's cause of action against the third-party tortfeasor, and thus hold that where any such cause of action has been waived, the insurer's ability to bring a subrogation claim is waived as well, regardless of notice or consent. *See,* *e.g., Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1186 (Utah 2002). *See generally* Validity, Construction, and Application of Contractual Waiver of Subrogation Provision, 2006 A.L.R.6th 14, §§ 45–46 (citing cases in both camps). We find the latter approach to be most in accord with Pennsylvania law.

¶ 19 First, although subrogation is an equitable doctrine which endeavors to place the burden of a debt upon the person who should bear it, we do not find it inequitable to enforce the waiver of subrogation provision in the instant case. As this Court noted in *Penn Avenue, supra,* a waiver of subrogation clause such as the one in this case

> does not attempt to transfer liability for negligence away from the tortfeasor. Rather, the tortfeasor who obtains insurance coverage to pay claims for which he is liable does not, *ipso facto,* transfer liability away from himself to the other party to the clause in question. He *satisfies* his debt to that party.

*Penn Avenue,* 798 A.2d at 259 (quoting trial court opinion with approval) (emphasis original). Thus, through the waiver of subrogation clause in the construction contract, Appellees and Watson agreed to share the burden of either party's negligence by requiring the purchase of property insurance covering the construction work and by agreeing not to sue each other for damages covered by that insurance. In that sense, both Appellees and Watson are insureds under the property insurance policy, and neither is a third-party tortfeasor.

¶ 20 Moreover, it is clear that, under Pennsylvania law, subrogation is a contingent and derivative right, and a subrogee stands in the shoes of the subrogor and "can only recover damages when his subrogor has a legally cognizable cause of action against a third party." *Kiker,* 742

A.2d at 1086 (internal quotation marks omitted); *see also Chow,* 571 Pa. at 373, 812 A.2d at 590; *Insurance Co. of North America,* 446 Pa. at 50, 284 A.2d at 729. It is undisputed that, by entering into the construction contract, Watson waived its right to sue Appellees for any damages which were otherwise compensable through Watson's property insurance—the very damages covered under the policy for which Appellants seek compensation. Thus, for these damages, Watson has no legally cognizable cause of action against Appellees; for that reason, Appellants have no cause of action either.

¶ 21 The Court of Appeals for the Third Circuit in *Church Mutual Ins. Co. v. Palmer Constr. Co., Inc.,* 153 Fed.Appx. 805, 808 (3d Cir.2005) (unpublished opinion), purporting to apply Pennsylvania law, followed this same logic. Therein, the insurer of a work site brought a subrogation claim on behalf of the owner against the contractor for its negligence in failing to secure the work site, which allegedly resulted in a fire started by an arsonist. The contractor defended this suit, citing a waiver of subrogation provision in the AIA construction contract nearly identical to that at issue in the instant case. In response to the insurer's argument that the provision should not be enforced because the insurer was not a party to the construction contract, the court found that fact to be irrelevant:

> [I]t is a misunderstanding of the doctrine of subrogation to argue that a contract clause that applies to a subrogor does not apply to the subrogee [because the subrogee was not party to the contract]. It is well-established that subrogation is derivative in nature, placing the subrogee "in the precise position of the one to whose rights and disabilities he is subrogated." *Allstate Ins. Co. v. Clarke,* 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987); *see also Bell v. Sle-*

*zak,* 571 Pa. 333, 812 A.2d 566, 574 n. 8 (2002) (summarizing with approval the Superior Court's explanation that "a subrogee has no greater rights than those held by the subrogor"), *Chow[ ],* 571 Pa. 369, 812 A.2d [at] 590[ ]. Thus, to put it simply, the waiver clause would have the same effect on the Temple, as subrogor, as it would have on Church Mutual, as subrogee. Church Mutual, standing in the Temple's shoes, as it were, can do no more or no less under the contract than what the Temple could do. As such, whether or not Church Mutual was a party to the construction contract is irrelevant in considering the effect of the waiver clause.

*Church Mutual Ins. Co.,* 153 Fed.Appx. at 808 (footnote omitted); *see also Bakowski,* 52 P.3d at 1186. As similarly explained in Couch on Insurance:

> An agreement which releases a contracting party from liability for its own negligent acts also serves to defeat the subrogation rights of the insurer. Since an insurer's right to subrogation is limited to the rights of the insured, and there can be no subrogation where an insured has no cause of action against a defendant, an insurer has no subrogation claim against a party to an agreement where the agreement entered before the loss releases the tortfeasor.

Couch on Insurance, § 224:97 (footnotes omitted).

¶ 22 Based on the foregoing, we hold that a waiver of subrogation provision such as the one in this case is enforceable irrespective of whether the insurer seeking to avoid its enforcement was a party to the contract of which the provision is a part, or whether the insurer had notice of, or consented to, the provision. We conclude this rule best comports with Pennsylvania subrogation law.

¶ 23 We further agree with the Utah Supreme Court that this rule best allows contracting parties to retain their autonomy in making and executing contracts, including waivers of liability, while at the same time enabling insurers to protect themselves from such waivers of subrogation:

Insurers can protect themselves by (1) inserting an exclusion into their policies that permits the insurer to deny coverage if an insured waives the insurer's subrogation rights, (2) raising premiums to offset outlays incurred from the loss of their subrogation rights, (3) investigating whether a potential insured has already waived any subrogation rights, (4) requiring insureds to warrant at the time a policy is issued that the insured has not, and will not, waive the insurers' subrogation rights, and (5) obtaining reinsurance to cover any waiver of subrogation rights.

*Bakowski,* 52 P.3d at 1186.

¶ 24 Accordingly, we reject Appellants' contention that the waiver of subrogation provision in the construction contract was not enforceable because they were not parties to the construction contract and had no notice of, and had not consented to, the provision.

¶ 25 For all the foregoing reasons, we affirm the trial court's order.

¶ 26 Order **AFFIRMED.**