

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-23-2009

# St. Paul Fire and Ma v. Turner Constr Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2292

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"St. Paul Fire and Ma v. Turner Constr Co" (2009). *2009 Decisions.* Paper 1711.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1711

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2292

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
as subrogee of Brandywine Cira, L.P.,

Appellant

v.

TURNER CONSTRUCTION COMPANY

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-07-cv-00270)
District Judge: Honorable Eduardo C. Robreno

Submitted Under Third Circuit LAR 34.1(a)
January 27, 2009

Before: SCIRICA, Chief Judge, AMBRO, and SMITH, Circuit Judges

(Opinion filed March 23, 2009 )

OPINION

AMBRO, Circuit Judge

Brandywine Cira L.P. entered into a Construction Management Services Agreement with Turner Construction Company in 2003, according to which Turner agreed to act as construction manager for the building of Cira Centre, a 28-story Cesar Pelli-designed office tower in Philadelphia which opened in late 2005. During construction, a flow meter installed by a subcontractor of Turner detached from a pipe, causing water damage to the building. St. Paul Fire and Marine Insurance Company ("St. Paul"), which had sold property insurance to Cira, paid it $5 million to cover the damages. St. Paul then sought reimbursement from Turner, and it refused. With settlement not obtainable, St. Paul filed in federal court for a declaratory judgment that the agreement between Cira and Turner permits St. Paul, as subrogee of Cira, to recover its $5 million outlay from Turner. The parties agreed on the facts and that Pennsylvania law governs the interpretation of the agreement. On summary judgment, the District Court ruled against St. Paul, and it timely appealed. We affirm.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We review an order granting summary judgment *de novo*, applying the standard that applies in the District Court. *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

2

Subrogation permits an insurer that has paid its insured to assert the insured's rights against the tortfeasor and thereby recover its payment. *Universal Underwriters v. Kacin*, 916 A.2d 686, 692 (Pa. Super. 2007). On a construction project, the contractor risks liability for negligence and the owner risks damage to its property. The contractor purchases liability insurance and the owner purchases property insurance. If the contractor damages the owner's property, the owner or its property insurer (as subrogee) may sue the contractor for negligence. To prevent such litigation, an owner may waive its rights against the contractor for property damage to the extent covered by the owner's property insurance. *See Commercial Union Insurance v. Bituminous Casualty*, 851 F.2d 98, 101 (3d Cir. 1988); *Kacin*, 916 A.2d at 691. This assigns losses from property damage caused by the contractor's negligence exclusively to the owner's property insurer (again, to the extent it pays the owner for damages incurred).

The argument against permitting such waivers is that it makes the contractor less vigilant in preventing property damage. 2 Justin Sweet *et al.*, Sweet on Construction Industry Contracts: Major AIA Documents § 22.04[M] (4th ed. 1999). Despite this argument, the American Institute of Architects, which drafted the form of waiver in this case, has made "strenuous efforts" to convince courts to enforce such waivers, and Pennsylvania courts have agreed. *Id.*; *Kacin,* 916 A.2d at 691.

3

The waiver contained in § 13.2.9 of the construction contract before us is an AIA standard term.[1] It states that "[t]he Owner [Cira] and Construction Manager [Turner] waive all rights against . . . each other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this paragraph 13.2 or other property insurance applicable to the Work . . . ." This is simple enough: if the owner is covered by property insurance, neither it nor its insurer standing in its shoes can recover from the contractor to the extent of that coverage. But St. Paul argues that the waiver is in tension with this sentence—apparently not standard, thus called a custom term—in § 13.1: "Nothing contained in the insurance requirements of this Article 13 is to be construed as limiting the extent of [Turner's] responsibility for payment of damages resulting from its operations under this Contract."

In interpreting contracts, Pennsylvania courts strive to identify the intent of the parties. *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). The object is not their inner, subjective intent, but rather the intent a reasonable person would apprehend in considering the parties' behaviors. *See Ingrassia Construction v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984). Courts initially try to resolve disputes relating to a written contract (agreed to be the final expression of the intent of the parties) without resort to evidence about prior negotiations. *See Steuart*, 444 A.2d at 662–63; E. Allan Farnsworth,

---

[1] The waiver is substantively identical to language in AIA contracts A201-1987 § 11.3.7 and A201-1997 § 11.4.7.

Contracts § 7.12 (3d ed. 1999) ("Farnsworth").  Regardless, they may consider other circumstances relevant to the contract, such as industry practice.  *See Mellon Bank v. Aetna*, 619 F.2d 1001, 1011 & n. 12 (3d Cir. 1980).  (Although not binding authority in Pennsylvania, a New Jersey court stated the rationale for considering surrounding circumstances well when it wrote that "since almost all language is susceptible of more than one reasonable construction, the attendant circumstances are always relevant in ascertaining the intended meaning." *Deerhurst Estates v. Meadow Homes*, 165 A.2d 543, 551 (N.J. Super. Ct. App. Div. 1961).)

We believe that the contract here waives subrogation, as it is not reasonable that people seeking to limit the waiver would have done so in the manner St. Paul contends the parties did.  The contextual information that we find determinative is that the waiver has been a part of standard AIA contracts (hence, industry practice) for at least 20 years and courts have litigated related issues since at least the 1970s.  *See, e.g., E. C. Long v. Brennan's of Atlanta,* 252 S.E.2d 642 (Ga. Ct. App. 1979).  Pennsylvania courts have repeatedly enforced the waiver in the face of varied objections.  *Jalapenos v. GRC Gen. Contractor*, 939 A.2d 925 (Pa. Super. 2007) (waiver enforceable despite apparent conflict with indemnification provision and inability of owner to obtain compensation due to its failure to buy insurance as required); *cf. Kacin*, 916 A.2d 686 (waiver enforceable despite lack of notice to or consent of insurer and apparent conflict with contractors' warranties as to materials and workmanship); *Penn Avenue Place v. Century Steel Erectors*, 798

5

A.2d 256 (Pa. Super. 2002) (waiver enforceable despite public policy prohibiting exculpation of liability for negligence). These courts do so "[b]ecause it is economically inefficient for both parties to insure against the same risk, the parties' inclusion of an insurance procurement clause indicates that the parties intended to avoid both parties having to face potential liability for the same risk." *Jalapenos*, 939 A.2d at 930 (internal quotation marks omitted).

We do not think a reasonable person would read the preservation-of-liability provision to nullify the waiver. The former does not refer specifically to the waiver and the drafters buried it at the end of a separate section. In light of Pennsylvania's history of vigorous enforcement of the waiver, a reasonable person would assume that if the parties wished to nullify it, they would have amended the text of the waiver itself, not included it at all, or included a statement of nullification that referred to it specifically, appeared with it in the same section, or appeared in a stand-alone section. Although Pennsylvania courts generally give more weight to custom terms than to standard terms, *cf. Woytek v. Benjamin Coal,* 446 A.2d 914, 917 (Pa. Super. 1982), the custom term here needs to stand out as a reasonable signal of the parties' intent to override the waiver, and it does not. (An example of such an attempted signal would be what is known as a "super-override" provision, where the sentence in § 13.1 would stand out, typically at the beginning of a section and with an appropriate lead, such as "Notwithstanding anything contained in this Section 13 to the contrary, nothing contained in the insurance requirements of this Article

6

13 is to be construed as limiting the extent of the Construction Manager's responsibility for payment of damages resulting from its operations under this Contract." Though this wording would come closer to the conflict St. Paul argues to exist, it too falls short; the super-override would apply only to "the insurance requirements of this Article 13," and the waiver in § 13.2.9 is one of liability. Thus, we cannot conclude that the custom sentence amidst § 13.1 supervenes the waiver of liability in § 13.2.9.

\* \* \* \* \*

We thus affirm the order of the District Court.