J-S78044-17 & J-S78045-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: B.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.D.W., FATHER | : | No. 1193 WDA 2017 |

Appeal from the Order July 19, 2017
in the Court of Common Pleas of Somerset County
Orphans' Court at No(s):  56-DP-0000020-2008

| | | |
|---|---|---|
| IN RE: M.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.D.W., FATHER | : | No. 1194 WDA 2017 |

Appeal from the Order July 19, 2017
in the Court of Common Pleas of Somerset County
Orphans' Court at No(s):  No. 56-DP-0000021-2008

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY STRASSBURGER, J.:          FILED JANUARY 29, 2018

M.D.W. (Father) appeals from the orders entered July 19, 2017, in the Court of Common Pleas of Somerset County, which removed his minor dependent daughters, M.B., born in April 2002, and B.B., born in July 2003 (collectively, Children), from his care, and placed them in the physical custody of Somerset County Children and Youth Services (CYS).  We affirm.

_____
* Retired Senior Judge assigned to the Superior Court.

The record reveals that CYS filed dependency petitions with respect to Children on March 27, 2017.[1]  In its petitions, CYS averred that Father and L.M. (Mother) lacked suitable housing, and that they were failing to address Children's medical needs.  Dependency Petition (M.B.), 3/27/2017, at 3-6.  CYS further averred that Father may be engaging in drug activity, and that Mother suffers from a heroin addiction.  Id.  The orphans' court adjudicated Children dependent on May 17, 2017, and awarded legal custody to CYS.  The court awarded physical custody to Father, despite CYS's concerns.

The orphans' court conducted a permanency review hearing on July 19, 2017.  During the hearing, CYS presented the testimony of caseworker, Hannah Watkins.  Ms. Watkins testified that, despite Father's having physical custody of Children, they "have been residing between dad's apartment -- they've been staying with [Mother] at friend[s'] houses.  I don't have names or addresses of those friends.  They've been staying with -- to my knowledge, with [Mother's] sister [S.B.] in Listie, PA, as well as [Mother's] parents in Confluence, PA."  N.T., 7/19/2017, at 6.  In addition, Ms. Watkins testified that Father provided a positive drug screen to his probation officer.  Id. at 8.

_____

[1] This is Children's second adjudication of dependency.  The record reveals they were adjudicated dependent in April 2008 and remained dependent until February 2011.

Based on these circumstances, Ms. Watkins testified that she could no longer assure Children's safety, and that the orphans' court should remove Children from Father's care.[2] Id. at 9. Ms. Watkins testified that she arranged for Children to stay at the Children's Aid Home "until we can look at familial options." Id. at 10. She explained that she asked Father and Mother to provide names of potential kinship placements, but that they "wouldn't speak. They refused to sign the office paperwork for me." Id.

Ms. Watkins acknowledged that Children had stayed with their maternal grandparents in the past, but she was not comfortable placing Children in the grandparents' home without first conducting a kinship home study.[3] Id. at 11. Ms. Watkins explained that the grandparents have failed to provide adequate supervision for Children. Id. She recalled one incident when she went to visit Children at the grandparents' home, "[a]nd, they were not at the grandparents' house, and the grandparents did not have a name or location for the girls at that time." Id. at 24.

_____

[2] Children's guardian ad litem agreed that Children's safety and welfare were best served by the suggested placement, but did not indicate whether she had consulted Children concerning their preferences. N.T., 7/19/2017, at 12. We note with displeasure that the guardian ad litem has failed to file a brief in this appeal, or even a letter stating her position.

[3] Ms. Watkins did not discuss whether Children could live with their maternal aunt, S.B. However, it is clear that Children could not live with S.B., because Mother was staying at S.B.'s home at the time of the hearing. N.T., 7/19/2017, at 20. Further, in its dependency petitions, CYS averred that S.B. was being evicted from her home. Dependency Petition (M.B.), 3/27/2017, at 6.

Mother then testified. Mother contended that the orphans' court should place Children with her family, rather than in the Children's Aid Home. Id. at 16-17. She suggested that Children should not be placed in the Children's Aid Home because "this is their summer vacation[,]" and because they are honor roll students who "have never been in any kind of trouble." Id. at. 14-15. Mother claimed that she submitted a form listing potential kinship placements to CYS, but that "they're telling me that they never received it[.]"[4] Id. at 17-18. She noted that Children often stay with either their maternal grandparents, or with their maternal aunt. Id. at 13-14.

Father also testified. He admitted that he lost his job and was "losing [his] place to live." Id. at 27, 30. Father also admitted that he provided a positive drug screen to his probation officer. Id. at 30. Father agreed that the orphans' court should place Children with a family member rather than in the Children's Aid Home. Id. at 25. Father claimed that Mother told him she filled out a list of potential kinship placements, and agreed that Children should reside with "any one of the people who are on the kinship resource

_____

[4] Father's counsel submitted an alleged copy of the form as an exhibit, but the form is not contained in the certified record. The only indication of whom Mother listed on the form was a statement by Father's counsel that "the other sisters of [Mother] on that form have ... their own houses which have extra bedrooms. So, they would be available as long as they're willing to do it." N.T., 7/19/2017, at 29.

form[.]" Id. at 25, 27. He testified that Children often stay with either their maternal grandparents or with one of two maternal aunts. Id. at 26.

At the conclusion of the hearing, Father's counsel argued that Children should be placed with one of the family members listed on the kinship resource form, "even without having completed the full kinship care study because [Father's] argument is that the agency should have already done that[.]" Id. at 28-29. In the alternative, Father's counsel argued that the court should "at least direct the agency to pursue that as soon as possible … because it sounds like there was some type of breakdown in receiving the kinship care resource form." Id. at 29. Counsel for CYS agreed that she and Ms. Watkins would meet with Father and Mother after the hearing and discuss any possible kinship placements. Id. The orphans' court then reached the following decision.

> I really think what's been recommended by the agency, based on what I hear here today, is appropriate.
>
> I hate like the devil to put these kids in a placement facility; but, on the other hand, they can't just be scattered all over. You take them tonight, you take them tomorrow night[.] That's -- there's no stability.
>
> I mean, you know, yeah, you can -- you can use your parents all you want, making them take your kids; but, you guys have the responsibility to make sure that there is stable permanent housing for these children, and neither one of you is in a position to do that now.
>
> I'm going to go ahead with what's been recommended here. I'm also going to direct the agency get hot on this list of potential kinship resources. Unfortunately, any one of these

folks who's listed on this list is not going to keep them in Somerset school district unless they want to transport them.

Maybe that's something that can be worked out; but, frankly, I think what's been recommended here is necessary and appropriate based on what I see in front of me here today....

Id. at 32-33.

Following the hearing, the orphans' court entered permanency review orders removing Children from Father's care and placing them in the physical custody of CYS.[5]  In addition, the orders directed that CYS "shall investigate and pursue relative/kinship care options as necessary information is received by [CYS.]"  Permanency Review Order (Non-Placement) (M.B.), 7/19/2017, at 2.  Father timely filed notices of appeal on August 10, 2017, along with concise statements of errors complained of on appeal.[6, 7]

Father now raises the following issues for our review.

_____

[5] The record contains two sets of orders.  The orphans' court dictated the first set of orders at the conclusion of the permanency review hearing.  The court issued the second set of orders following the hearing.  Both sets of orders were docketed together, and have a docketing date of July 19, 2017.

[6] The orders on appeal changed Children's permanent placement goals from remain with parent or guardian to return to parent or guardian with a concurrent goal of adoption.  Thus, it is clear that the orders are final and appealable.  See In re H.S.W.C.-B., 836 A.2d 908, 911 (Pa. 2003) ("An order granting or denying a status change, ... shall be deemed final when entered.").  At the conclusion of the permanency review hearing, the court stated erroneously that Children's permanent placement goals would "remain return home[.]"  N.T., 7/19/2017, at 36.

[7] Mother did not appeal the orphans' court's orders, but did file a brief in this Court supporting Father's appeal.

1. Did the [orphans'] court err by placing [C]hildren at the Somerset County Children's Aid Home instead of with kin of [Mother]?

2. Did the [orphans'] court commit an error of law by failing to require [CYS] to provide adequate justification for why [CYS] did not investigate kinship care placement as opposed to placement in a group home?

3. Did the [orphans'] court abuse its discretion by failing to explicitly find as a fact whether [Children's] parents provided a kinship referral form, but implicitly concluding that [CYS] did not have to investigate those kin, by placing [C]hildren in a group home?

4. To the extent that the [orphans'] court may be considered to have implicitly found that [CYS] adequately investigated potential kinship foster placement sources, did the [orphans'] court abuse its discretion?

Father's Brief at 2-3 (suggested answers omitted).

We review the orphans' court's orders pursuant to an abuse of discretion standard of review. In re R.J.T., 9 A.3d 1179, 1190 (Pa. 2010). As such, we must accept the court's findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. Id.

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375. The Juvenile Act provides that a child may be adjudicated dependent if the orphans' court finds that he or she meets the requirements of one of ten definitions listed at 42 Pa.C.S. § 6302. If a court determines that a child is dependent, it must then enter an appropriate dispositional order. 42 Pa.C.S. § 6341(c), 6351(a); Pa.R.J.C.P. 1409(A)(1), 1509(D),

1515. Following adjudication and disposition, the court must conduct permanency review hearings at regular intervals. 42 Pa.C.S. § 6351(e)(3); Pa.R.J.C.P. 1607, 1608.

Relevant to this appeal, the Rules of Juvenile Court Procedure provide that orphans' courts must determine "whether the county agency has satisfied the requirements of Rule 1149 regarding family finding, and if not, ... why the requirements have not been met by the county agency" during each permanency review hearing.[8] Pa.R.J.C.P. 1608(D)(1)(h). The Rules direct that any permanency review order must indicate whether the family finding efforts made by the county agency were reasonable. Pa.R.J.C.P. 1609(D)(1). If family finding efforts were not reasonable, the court must order the county agency to engage in family finding prior to the next permanency review hearing. Pa.R.J.C.P. 1609(D)(2).

Rule 1149 imposes the following requirements with regard to family finding.

_____

[8] The Rules define "family finding" as follows.

> The ongoing diligent efforts of the county agency, or its contracted providers, to search for and identify adult relatives and kin, and engage them in the county agency's social service planning and delivery of services, including gaining commitment from relatives and kin to support a child or guardian receiving county agency services.

Pa.R.J.C.P. No. 1120.

A. Court's inquiry and determination.

(1) The court shall inquire as to the efforts made by the county agency to comply with the family finding requirements pursuant to 62 P.S. § 1301 et seq.

(2) The court shall place its determinations on the record as to whether the county agency has reasonably engaged in family finding.

B. Discontinued family finding. Family finding may be discontinued only if, after a hearing, the court has made a specific determination that:

(1) continued family finding no longer serves the best interests of the child;

(2) continued family finding is a threat to the child's safety; or

(3) the child is in a preadoptive placement and the court proceedings to adopt the child have been commenced pursuant to 23 Pa.C.S. Part III (relating to adoption).

C. Resuming family finding. The county agency shall resume family finding when the court determines that resuming family finding:

(1) is best suited to the safety, protection and physical, mental, and moral welfare of the child; and

(2) does not pose a threat to the child's safety.

Pa.R.J.C.P. 1149.

The comment to Rule 1149 provides further guidance on when and how county agencies should employ family finding.

Pursuant to paragraph (A), efforts by the county agency may include, but are not limited to whether the county agency is or will be: a) searching for and locating adult relatives and kin; b) identifying and building positive connections between the child

and the child's relatives and kin; c) when appropriate: i) supporting the engagement of relatives and kin in social service planning and delivery of services; and ii) creating a network of extended family support to assist in remedying the concerns that led to the child becoming involved with the county agency; d) when possible, maintaining family connections; and e) when in the best interests of the child and when possible, keeping siblings together in care.

The extent to which the county agency is involved in the case when a child is still in the home is dependent on several variables and specific to each case. In some instances, the county agency is more involved and actively engaged in family finding because the child needs support services or could be removed from the home. The search in these instances is used to find resources to help keep the child in the home by preventing removal, or to find resources if removal becomes necessary.

See 62 P.S. § 1301 for legislative intent regarding family finding and promotion of kinship care.

Family finding is required for every child when a child is accepted for services by the county agency. See 62 P.S. § 1302. It is best practice to find as many kin as possible for each child. These kin may help with care or support for the child. The county agency should ask the guardian, the child, and siblings about relatives or other adults in the child's life, including key supporters of the child or guardians.

Specific evidence should be provided indicating the steps taken to locate and engage relatives and kin. See Comment to Rule 1120 regarding diligent efforts considerations for locating relatives and kin. When considering the method by which relatives and kin are engaged in service planning and delivery, courts and the parties are encouraged to be creative. Strategies of engagement could include, but are not limited to, inviting relatives and kin to: 1) be involved in a family group decision making conference, family team conferencing, or other family meetings aimed at developing or supporting the family service plan; 2) assist with visitation; 3) assist with transportation; 4) provide respite or child care services; or 5) provide actual kinship care.

Pursuant to paragraph (A)(2), the court is to place its determinations on the record as to whether the county has reasonably engaged in family finding. The level of reasonableness is to be determined by the length of the case and time the county agency has had to begin or continue the process. For example, at the shelter care hearing, the county agency should at least ask the question whether there is family or kin available as a resource. The initial removal of the child is the most critical time in the case. Potential trauma should be considered and ameliorated by family finding efforts as much as possible. Phone calls at this time are reasonable. However, at the dispositional or permanency hearings, the county agency has had more time to engage in a more thorough diligent search as discussed infra. See also Rule 1120 and its Comment.

The court's inquiry and determination regarding family finding should be made at each stage of the case, including, but not limited to the entry of an order for protective custody, shelter care hearing, adjudicatory hearing, dispositional hearing, and permanency hearing. See Rules 1210, 1242, 1408, 1409, 1512, 1514, 1515, 1608, 1609, 1610, and 1611, and their Comments.

Paragraph (B)(3) is meant to include notice of intent to adopt, petition to adopt, or voluntary relinquishment of parental rights, or consent to adopt.

Pa.R.J.C.P. 1149, Comment.

Finally, Rule 1149 and its comment reference 62 P.S. § 1301 et seq., which governs Pennsylvania's kinship foster care program. The statute provides that "[f]amily finding shall be conducted for a child when the child is accepted for services and at least annually thereafter, until the child's involvement with the county agency is terminated or the family finding is

discontinued in accordance with section 1302.2."[9]  62 P.S. § 1302.1.  The

statute further provides as follows, in relevant part.

> (a) Establishment of program.--The Kinship Care Program is established in the department.
>
> (a.1) Relative notification.--Except in situations of family or domestic violence, the county agency shall exercise due diligence to identify and notify all grandparents and other adult relatives to the fifth degree of consanguinity or affinity to the parent or stepparent of a dependent child and each parent who has legal custody of a sibling of a dependent child within 30 days of the child's removal from the child's home when temporary legal and physical custody has been transferred to the county agency.  The notice must explain all of the following:
>
>> (1) Any options under Federal and State law available to the relative to participate in the care and placement of the child, including any options that would be lost by failing to respond to the notice.
>>
>> (2) The requirements to become a foster parent, permanent legal custodian or adoptive parent.
>>
>> (3) The additional supports that are available for children removed from the child's home.
>
> (b) Placement of children.--If a child has been removed from the child's home under a voluntary placement agreement or is in the legal custody of the county agency, the county agency shall give first consideration to placement with relatives or kin.  The county agency shall document that an attempt was made to place the child with a relative or kin.  If the child is not placed with a relative or kin, the agency shall document the reason why such placement was not possible.

_____

[9] The statute defines "accept for service" as "[d]ecide on the basis of the needs and problems of an individual to admit or receive the individual as a client of the county agency or as required by a court order entered under 42 Pa.C.S. Ch. 63 (relating to juvenile matters)."  62 P.S. § 1302.

62 P.S. § 1303.

With this authority in mind, we now turn to the issues raised by Father on appeal. The crux of Father's issues is that the orphans' court erred and/or abused its discretion by placing Children in the Somerset County Children's Aid Home, rather than kinship foster care. Father argues that (1) CYS failed to exercise due diligence by identifying and investigating potential kinship placements; (2) the court failed to find as a fact whether Mother did or did not submit a kinship resource form to CYS; (3) CYS failed to present evidence as to why potential kinship placements were inadequate; and (4) the court failed to order CYS to investigate potential kinship placements prospectively.[10] Father's Brief at 15-25.

In its opinion, the orphans' court found that neither Father nor Mother provided CYS with the names of any potential kinship placements prior to the permanency review hearing. Orphans' Court Opinion, 9/13/2017, at 2. The court further found Children's maternal grandparents were not an appropriate kinship placement, because they failed to provide adequate supervision for Children in the past. Id. at 2-3. The court explained that,

_____

[10] We note with disapproval that Father did not structure the argument section of his brief to correspond to his statement of questions involved. See Universal Underwriters Ins. Co., v. A. Richard Kacin, Inc., 916 A.2d 686, 689 n.6 (Pa. Super. 2007) ("Appellants violated [Pa.R.A.P.] 2119 in that the argument section of their brief is not divided into sections corresponding to each of their questions presented."). However, because Father's brief is not so defective as to preclude effective appellate review, we decline to dismiss this appeal. Id.

"because of the previous voluntary and problematic placements with the Maternal Grandparents and the failure of both parents to cooperate in providing appropriate kinship information, we find that [CYS] acted properly in this matter." Id. at 3.

We begin by addressing Father's claim that CYS failed to exercise due diligence by identifying and investigating potential kinship placements. Father's Brief 10-15, 18-21. Father argues that CYS should have begun to engage in family finding prior to the permanency review hearing. Id. at 18-19. Father further argues that CYS did nothing but provide Mother and Father with a potential kinship placement referral form, which should not be considered sufficient. Id. at 19.

Father is correct that CYS had an obligation to conduct family finding prior to the permanency review hearing. In addition to the requirements of the rules discussed above, the orphans' court specifically ordered CYS to engage in family finding at the time it adjudicated Children dependent. Order of Adjudication and Disposition—Child Dependent (M.B.), 5/22/2017, at 2 ("The court orders the Agency to engage and continue in family finding until further order of court.").

The record reveals that CYS did make some attempt to engage in family finding prior to Children's removal. Ms. Watkins testified that she asked Father and Mother to provide the names of potential kinship placements, but that they refused to do so. N.T., 7/19/2017, at 10. The

orphans' court accepted this testimony, and found that "neither parent provided any kinship resource information to CYS." Orphans' Court Opinion, 9/13/2017, at 2. While CYS was aware that Children had stayed with their maternal grandparents in the past, Ms. Watkins testified that the grandparents should not be considered as a kinship placement without further study, due to their failure to supervise Children. N.T., 7/19/2017, at 11, 24. In addition, it is clear that Children's maternal aunt, S.B., was not an appropriate kinship placement, because Mother was living with S.B. at the time of permanency review hearing. Id. at 20.

However, it does not appear that CYS utilized other resources known to them to overcome the parents' refusal to offer information. For example, there is no indication in the record that CYS sought the relevant information about other family members from the maternal grandparents or S.B. Nor is there any suggestion that CYS asked Children, who are teenagers, to identify possible kinship resources. From the record before us, it appears that there is merit to Father's contention that CYS did not conduct an adequate investigation of potential kinship placements by the time of the permanency review hearing.

Nonetheless, we conclude that Father is not entitled to the requested relief because the orphans' court did not err or abuse its discretion by placing Children in the Children's Aid Home. Essentially, Father's argument is that the court should have placed Children with a relative without first

ordering CYS to investigate. We cannot accept Father's argument, as such a placement would have endangered Children's safety. We conclude that the court acted in Children's best interests by placing them in the Children's Aid Home and directing CYS to investigate potential kinship placements before making a long-term placement decision.

Next, we address Father's claim that the orphans' court erred and/or abused its discretion by failing to make a specific finding of fact as to whether Mother did or did not submit a potential kinship referral form to CYS. Father's Brief at 15-18. Father waived this claim by failing to include it in his concise statement of errors complained of on appeal. In re M.Z.T.M.W., 163 A.3d 462, 466 (Pa. Super. 2017) ("With respect to issues not included in a concise statement, our Supreme Court has instructed that this Court has no discretion in choosing whether to find waiver.").

Even if Father had not waived this claim, he still would not be entitled to relief. As explained above, while the orphans' court did not discuss whether it found Mother's testimony on this issue to be credible, in its permanency review orders, the court found in its opinion that "neither parent provided any kinship resource information to CYS." Orphans' Court Opinion, 9/13/2017, at 2. The court further found that "because of the previous voluntary and problematic placements with the Maternal Grandparents and the failure of both parents to cooperate in providing appropriate kinship information, ... [CYS] acted properly in this matter." Id.

- 16 -

at 3. Thus, even if the court erred or abused its discretion by failing to make this specific finding of fact in its orders, it has already corrected its mistake, and Father's claim is now moot.

Father's next claim is that CYS failed to present evidence and/or document why Children's potential kinship foster care placements were inadequate. Father's brief at 21-22. Father failed to include this claim in his concise statement, and in his statement of questions involved, and it is waived. In re M.Z.T.M.W., 163 A.3d at 466.

Even if Father had preserved this claim for our review, the record indicates that CYS was aware of only two potential kinship placements for Children at the time of the permanency review hearing: their maternal grandparents and their maternal aunt, S.B. As we have already discussed, Ms. Watkins explained on the record that the grandparents should not be considered as a kinship placement without further study, due to their failure to supervise Children. N.T., 7/19/2017, at 11, 24. S.B. was not an appropriate kinship placement, because Mother was living with S.B. at the time of the permanency review hearing. Id. at 20.

Finally, we address Father's claim that the orphans' court erred by failing to order CYS to investigate potential kinship foster care placements prospectively. Father's Brief at 22-25. Once again, Father waived this issue by failing to include it in his concise statement and in his statement of questions involved. In re M.Z.T.M.W., 163 A.3d at 466.

Even if Father had not waived this claim, it is clearly meritless. The orphans' court's permanency review orders reveal that it did order CYS to investigate potential kinship placements prospectively. The orders provide that CYS "shall investigate and pursue relative/kinship care options as necessary information is received by [CYS.]" Permanency Review Order (Non-Placement) (M.B.), 7/19/2017, at 2.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion or commit an error of law by removing Children from Father's care and placing them in the physical custody of CYS. Therefore, we affirm the court's July 19, 2017 orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/29/2018