**PENN AVENUE PLACE ASSOCIATES, L.P. and OXFORD DEVELOPMENT COMPANY, Appellants**

v.

**CENTURY STEEL ERECTORS, INC. and P.J. DICK, INC., Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2002.

Filed May 2, 2002.

---

Donald L. Best, Pittsburgh, for appellants.

Stephen J. Poljak, Pittsburgh, for P.J. Dick, Inc., appellee.

Before: DEL SOLE, P.J., BOWES and KELLY, JJ.

DEL SOLE, P.J.

¶ 1 Penn Avenue Place Associates, L.P. (PAPA) and Oxford Development Company ("Appellants") appeal from the trial court's order granting Century Steel Erectors, Inc. and P.J. Dick, Inc.'s, ("Appellees") preliminary objections and dismissing Appellants' complaint. Upon review, we affirm.

¶ 2 The trial court summarized the facts of this case as follows:

The action arose from a fire which occurred at a building which was owned by Plaintiff Penn Avenue Place Associates, L.P. (hereinafter referred to as "the Owner").[1] The Owner had entered into a contract with Defendant P.J. Dick, Inc. (hereinafter "the General Contractor") for the renovation of the building. The General Contractor then entered into a subcontract with Defendant Century Steel Erectors, Inc. (hereinafter "the Subcontractor") under which it would be responsible for the demolition work associated with the renovation. According to Plaintiff's Complaint, "[o]n or about July 9, 1996, sparks, embers and hot debris from the welding and cutting work performed by Century Steel, its agents, representatives and/or employees, dropped to the roof of [the building] and ignited flammable materials located in the area where such welding and cutting work was taking place." ... "P.J. Dick, its agents, representatives and/or employees and Century Steel, its agents, representatives and/or employees were present at the time said sparks, embers and hot debris from the welding and cutting work by Century Steel its agents, servants, and/or employees, fell to the roof and ignited flammable materials located there."

1. In the Complaint, Plaintiffs plead that "[t]he real party in interest in this action is Arkwright Mutual Insurance Company, subrogee of PAPA and Oxford Development" (¶ 3), and that "[a]t all times material to this action, Oxford and PAPA were engaged in the business of owning, leasing, and developing and managing commercial real estate" (¶ 6). In the Contract attached to the Complaint as Exhibit "A", Oxford is named as the Construction Manager.

Trial Court Opinion, 2/10/00, at 2–3.

¶ 3 The fire damaged a large area of the roof surface, the brick and mortar on the elevator and water tank penthouses and roof parapet, and the roof-mounted heating and air conditioning equipment. Water and smoke damaged the roof and lower floors. Part of the cost of repairing this

damage was paid by Arkwright Mutual Insurance Company (now Factory Mutual Insurance Company), which provided property insurance coverage to PAPA and Oxford for the building. PAPA incurred an uninsured loss in the form of its deductible of $25,000.00. This action was filed to recover the full amount of damages sustained by PAPA, Oxford and Arkwright Mutual, including both insured and uninsured losses. Arkwright Mutual is identified as a real party in interest in the Complaint.

¶ 4 Appellants' complaint contained counts of gross negligence, negligence, negligence *per se* and breach of contract against both Appellees. Appellees then filed preliminary objections to the complaint. The basis of Appellees' preliminary objections was the "Waivers of Subrogation" clause which was incorporated in the contract between the Owner and the General Contractor, and in the subcontract between the General Contractor and the Subcontractor.

¶ 5 The trial court sustained Appellees' preliminary objections in the nature of a demurrer and dismissed the Complaint with prejudice. This decision, sustaining Appellees' preliminary objections, dismissed only the claim for insured loss, and permitted Appellants to file a separate action to recover their uninsured loss. PAPA and Oxford filed a Notice of Appeal from the trial court's order. The Superior Court entered a Memorandum and Order of Court quashing the appeal based upon a finding that it was taken from an interlocutory order.

¶ 6 On remand, Appellants filed a Motion for Reconsideration and Amendment of the lower court's Order of November 1, 1999. This Motion requested that the Order be amended to permit Appellants to proceed with their claim for uninsured loss in the existing case, rather than file a new action, and that the original Complaint be reinstated. This motion was granted by the trial court pursuant to a consent order dated April 2, 2001.

¶ 7 Between the filing of the lower court's order of November 1, 1999 and the Superior Court's decision to quash the appeal, the parties resolved the claim for the uninsured loss sustained by Appellants, which was limited to their deductible of $25,000.00. The trial court was advised of this agreement. The parties further stipulated and agreed that the trial court could reconsider Appellees' preliminary objections raising the waiver of subrogation clause of the contract between the parties. The trial court then entered an Order dated April 5, 2001, sustaining Appellees' demurrer and dismissing the Complaint with prejudice for the same reasons set forth in its Opinion dated February 10, 2000. This appeal followed.

¶ 8 Appellants present the following issues for our review:

1. Whether the Appellants' claims against the Appellees are barred to the extent covered by insurance by the waiver of subrogation provision contained in the construction contract between Penn Avenue Place Associates, L.P. and P.J. Dick, Inc., where the negligent conduct of the Appellees from which the Appellants' claims arise constitutes a violation of ordinances and regulations enacted to protect public safety.

2. Whether the waiver of subrogation clause contained in the construction contract included within its scope the entire subrogation claim asserted by the Appellees' property insurer, and was not limited to specific items or areas of property included within the definition of "the Work" set forth in the contract.

Appellants' Brief at 3.

¶ 9 The only claim at issue here is Appellants' claims for insured losses. With

regard to their first issue, Appellants claim that Appellees cannot claim the benefit of the waiver of subrogation provision of the construction contract because their acts and omissions causing the loss constitute a violation of an ordinance or regulation enacted for the protection of public safety. Appellants' Brief at 10. Appellants allege that the conduct of P.J. Dick and Century Steel Erectors violated the City of Pittsburgh's Fire Prevention Ordinances establishing fire safety requirements for welding and cutting. Appellants' Brief at 15. Appellants contend that Century Steel Erectors failed to maintain the required fire watch after completing its work. Appellant's Brief at 6.

¶ 10 Appellants do not contend that the waiver clause at issue should not be enforced because it was unclear or because Arkwright Mutual lacked notice of it. Nor do they argue that a waiver of subrogation clause in a contract is generally unenforceable, or should not be enforced in appropriate circumstances. Rather they argue that in this case Appellees cannot claim the benefit of the waiver of subrogation provision of the construction contract because their acts and omissions causing the loss violated an ordinance or regulation enacted for the protection of public safety. Appellants' Brief at 10.

¶ 11 It is Appellants' contention that:

Under Pennsylvania law, a waiver of a subrogation provision cannot be raised as a bar to liability when the conduct giving rise to liability constitutes a violation of a statute, ordinance, or regulation enacted to protect public safety.

Appellants' Brief at 10. In support of this assertion, Appellants cite *Warren City Lines, Inc. v. United Refining Co.*, 220 Pa.Super. 308, 287 A.2d 149 (1971). Appellants assert that this case establishes that a party responsible for causing a loss cannot claim the benefit of an indemnity

provision of a contract where the conduct resulting in the loss violated a state fire code regulation. *Id.* at 10. Appellants argue that a waiver of subrogation clause is equivalent to an exculpatory or indemnity provision in a contract. The waiver clause effectively bars any cause of action against the party benefiting from the waiver, thereby immunizing that party from liability, and requires someone other than the wrongdoer to ultimately pay for any loss caused by its negligence. *Id.* at 13.

■ ¶ 12 The trial court in its Opinion pointed out that *Warren City* does not involve waivers of subrogation, but instead involves an indemnity clause that is indeed "exculpatory" because it shifts liability for negligence away from the very party who was negligent. Trial Court Opinion, 2/10/00, at 6. The case at hand is not analogous to indemnification clauses where the indemnitee is the tortfeasor. *Id.* at 7. In finding the waiver of subrogation clause valid and not void as against public policy, the trial court stated:

[A] waiver of subrogation clause, such as the one at issue here, does not invoke public policy concerns because it does not attempt to transfer liability for negligence away from the tortfeasor. Rather, the tortfeasor who obtains insurance coverage to pay claims for which he is liable does not, *ipso facto,* transfer liability away from himself to the other party to the clause in question. He *satisfies* his debt to that party. The public policy concerns regarding indemnification for one's own negligence are therefore not an issue here. Waivers of subrogation are a matter of contract.

*Id.* We agree with the trial court and affirm on this basis. The subrogation waiver clause is enforceable.

¶ 13 Appellants next assert that the waiver only applies to damage to "the Work" as that term is defined in the con-

tract. Appellants' Brief at 17. Appellants claim that "the Work" is limited to the specific areas under renovation. Appellants maintain that the existing elements and fixtures of the building that were damaged, and the damaged lower floors due to the water used to extinguish the fire was not part of "the Work" under the renovation contract. Appellants claim that subrogation claims for coverage provided for damage to parts of the building not included within the scope of "the Work" would not be abrogated by the waiver provision. *Id.*

¶ 14 We disagree. The Waivers of Subrogation clause provides in its entirety:

The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a

duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Standard Form of Agreement Between Owner and Contractor, ¶ 11.3.7.

¶ 15 In this case, the insurer, Arkwright, paid the claim for all damage to the insured property resulting from the fire. This included the property that was part of the renovation work, as well as the property that was damaged as a result of the fire and the efforts to extinguish it. The waiver of subrogation clause is broad. The entire claim paid by the insurer as a result of the fire damage is subject to the waiver of subrogation clause. Thus, the applicability of the waiver is not limited to only areas that were involved in the renovation work.

¶ 16 Order affirmed.