Connolly, Thomas E., J.

INTRODUCTION

The plaintiff, Federal Insurance Company (“Federal”), as subrogee of Millennium Partners Management, LLC (“Millennium”), brought this negligence action against the defendants, CBT/Childs Bertman Tseckares, Inc. (“CBT”), Cosentini Associates (“Cosentini”), and Willco Sales and Service, Inc.,[3] seeking to recover for properly damage in connection with a fire on property owned by Millennium. The defendants had performed construction services at the property. The matter is before the Court on CBT’s and Cosentini’s motion for summary judgment and separate and final judgment. For the following reasons, the motion is DENIED.

*473
BACKGROUND

The summary judgment record viewed in the light most favorable to the nonmoving party, Federal, is as follows: Federal is the subrogee of Millennium pursuant to an insurance policy for Millennium’s property at 3 Avery Street in Boston (“the Property”). Millennium and CBT were parties to an agreement (“the Millennium/CBT Agreement”) in which CBT would perform architectural and construction related services on the Property. The Millennium/CBT Agreement, and related documents, included waivers of liability and subrogation (“the Waivers”). The Waivers provided that Millennium, as the owner of the property, would waive all rights for damages against CBT, as the architect, and against its consultants, agents, and employees.[4]
Cosentini was retained by Millennium’s developmental entity, New Commonwealth Center Limited Partnership (“NCCLP”), to provide mechanical and engineering services for the construction project under a separate agreement (“the NCCLP/Cosentini Agreement”). The NCCLP/Cosentini Agreement did not contain provisions waiving liability and subrogation with respect to Cosentini. That agreement was signed by an officer of NCCLP who also executed the Millennium/CBT Agreement.
On November 20, 2001, a fire occurred on the Property. The fire was caused by an over accumulation of trash and debris in a trash chute that was designed and installed by the defendants as part of the construction project. The Property sustained damage as a result of the fire. In accordance with Millennium’s insurance policy, Federal made payments to Millennium totaling $372,872.33. Federal now seeks to recover those payments from the defendants.

DISCUSSION

I. Summary Judgment Standard

A motion for summary judgment shall be granted where the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, shows that there are no genuine disputes of material fact and the moving party is entitled to judg-mentas a matter oflaw. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a genuine issue as to any material fact and that it is entitled to have questions of law resolved in its favor. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); Ford Motor Co. v. Barrett, 403 Mass. 240, 242 (1988). A fact is “material” if it “is one that might affect the outcome of the suit under the applicable law.” Mulvihill v. The Top-Flite Co., 335 F.3d 15, 19 (1st Cir. 2003). Where the moving party does not bear the burden of proof at trial, it may establish the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass. at 716.
If the moving party “establishes the absence of a triable issue,” the nonmoving party cannot defeat the motion by resting on mere allegations or denials in its pleadings or bare assertions of disputed facts. Pederson, 404 Mass. at 17. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, the nonmoving party “must respond and allege specific facts which would establish the existence of a genuine issue of material fact” and support its allegations with admissible and competent evidence, such as by submitting into the record affidavits or other evidentiary materials as provided in Rule 56. Kourouvacilis, 410 Mass. at 711-12; Pederson, 404 Mass. at 17. See also Mass.R.Civ.P. 56(c), (e); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). For a dispute of material fact to be “genuine,” it must be shown that “a reasonable factfinder could resolve the point in favor of the non-moving party.” Mulvihill 335 F.3d at 19. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a dispute is “genuine... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party”). In making that determination, the Court must construe the facts in the record in the light most favorable to the nonmoving party and draw any reasonable inferences in its favor. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002); Harrison v. NetCentric Corp., 433 Mass. 465, 468 (2001). See also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

II. Waivers of Liability, Subrogation, and Statutory Duties

Federal alleges that the fire and property damage was proximately caused by the negligent acts and omissions of CBT and Cosentini, including the design and installation of the trash chute, and related conduct, as well as their failure to comply with applicable statutes, regulations, codes, rules, industry standards, and/or ordinances of the Commonwealth of Massachusetts. CBT and Cosentini argue that the Waivers contained in the Millennium/CBT Agreement are enforceable releases from liability and bar Federal’s recovery. They claim that despite the different corporate organization between Millennium and NCCLP, the Waivers found in the Millennium/CBT Agreement apply with equal force to Cosentini, pointing out that the individual who executed the Millennium/CBT Agreement on behalf of Millennium also executed the NCCLP/Cosentini Agreement as an officer of NCCLP. Federal disputes the assertions made by the defendants.
The parties have raised other issues in their submissions to the Court. However, for purposes of this *474 motion, the parties have agreed to limit the question before the Court to whether the Waivers in the Millennium/CBT Agreement exculpate the defendants from liability for their alleged ordinary negligence.
A. CBT’s Liability
Massachusetts law supports the enforcement of the Waivers in so far as Millennium waived CBT’s liability for ordinary negligence in the discharge of its architectural and construction services that form the substance of Millennium/CBT Agreement. Henry v. Mansfield Beauty Acad., Inc., 353 Mass. 507, 510-11 (1968); Barrett v. Conragan, 302 Mass. 33, 34 (1938); Gonsalves v. Commonwealth, 27 Mass.App.Ct. 606, 608 n.2 (1989). Nevertheless, it is well-settled that a waiver of liability will not be enforced where it is contrary to public policy. Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 18-19 (1997), citing Henry, 353 Mass. at 511 (“Even where simple negligence is alleged, our cases, for policy reasons, are cautious in enforcing releases against liability and in certain circumstances decline to do so”). In particular, a waiver of liability for negligence does not “shield [a party] from responsibility for violation of a statutory duty.”[5] Henry, 353 Mass. at 511. See also Powers v. Mupko, 12 Mass. L. Rptr. 517, 518-19, 2000 WL 33170940 (2000) (holding that defendant could not benefit from release of liability signed by plaintiff due to defendant’s failure to abide by statute).
In that regard, the present controversy bears resemblance to the circumstances in Federal Ins. Co. v. Cogswell Sprinkler Co. Inc., No. 03-CV-10920-MEL, 2005 WL 4169716 (D.Mass. Feb. 15, 2005). In Cogswell, the plaintiff sought recovery from the defendant in connection with the defendant’s negligent design, installation, and inspection of a sprinkler system that had ruptured, though the plaintiffs insured had waived any and all claims against the defendant. It was specifically alleged that the defendant was negligent in meeting National Fire Protection Association standards (“NFPA standards”), as incorporated by reference into the Massachusetts State Building Code. See G.L.c. 143, §§3A, 94; 780 Code Mass. Regs. §901.1; §901.4 (6th ed. 1997). Consequently, the Cogswell Court held that the plaintiffs recovery was not barred by the waiver as a matter of law and, thus, denied summary judgment for the defendant. Cogswell, No. 03-CV-10920-MEL (D.Mass. Feb. 15, 2005), relying on Henry, 353 Mass. at 511.
Federal, likewise, specifically alleges that CBT negligently failed to comply with statutory duties under the Massachusetts State Building Code and NFPA standards applicable to the construction project and that such negligence produced the damage to the property. On those facts, Federal’s recovery from CBT is not barred by the Waivers as a matter of law. See Henry, 353 Mass. at 511. “[P]ublic policy precludes [a defendant] from exculpating itself from liability for negligence in a task that affects public interest and safety.” See Cogswell, No. 03-CV-10920-MEL (D.Mass. Feb. 15, 2005). It would undermine the very purpose of the statutory duties in question if CBT could have prospectively eliminated its legal obligations thereto. Spence v. Reeder, 382 Mass. 398, 413 (1981) (“[C]ourts have long refused to give effect to purported waivers of statutory rights where enforcement of the particular waiver would do violence to the public policy underlying the legislative enactment”). See e.g., Desseau v. Holmes, 187 Mass. 486, 488 (1905) (“[I]t is not in the power of one who may be directly affected by [a statute] to contract in advance that it may be disregarded”).

B. Cosentini’s Liability

Cosentini also cannot avoid liability to Federal on a theory of waiver of subrogation. The NCCLP/Cosentini Agreement does not contain a waiver of liability or subrogation, or other allocation of risk away from Cosentini, as does the Millennium/CBT Agreement. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 775 (2002) (“[A] person is liable for his own negligent acts, absent an express agreement to the contrary”). See Great Atl. & Pac. Tea Co. v. Yanofsky, 380 Mass. 326, 333-34 (1980). In addition, that the same individual from Millennium and NCCLP signed both the Millennimn/CBT Agreement and the NCCLP/Cosentini Agreement does not provide a basis for extending the Waivers of CBTs liability to that of Cosentini. The defendants’ argument on that issue is essentially a call for the Court to disregard the “corporate form” of Millennium and NCCLP and unite their contractual rights and obligations by virtue of a common signatory on different contracts. Millennium and NCCLP are distinct entities and so have distinct rights and obligations that are incurred separately from one another. See Berry v. Old South Engraving Co., 283 Mass. 441, 451 (1933). Absent a compelling and equitable justification, the Court will not look beyond the corporate form. Gottlin v. Herzig, 40 Mass.App.Ct. 163, 167-68 (1996), review denied, 422 Mass. 1107 (1996). Disregard of the corporate form is an equitable means to avoid injustice. Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 (2000). It is the exception, not the rule, and requires satisfaction of a high standard. Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F.Sup. 598, 605 (D.Mass. 1997), quoting American Home Assur. Co. v. Sport Maska, Inc., 808 F.Sup. 67, 73 (D.Mass. 1992). See My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618-20 (1968).
The Court considers numerous factors when making its decision.[6] Commonwealth Aluminum Corp., 980 F.Sup. at 606. Those factors have not been implicated here.[7] There is also no injustice in recognizing that Cosentini may be held accountable for its negligence or wrongdoing where it did not take the opportunity to bargain for a waiver of liability and subrogation in its negotiations with NCCLP. Millennium contracted *475 with CBT for itself and in its own name, as did NCCLP with Cosentini. Thus, Cosentini should not look to the separate contractual arrangements made between Millennium and CBT. See Berry, 283 Mass. at 451. (entities are not treated as agents of one another “when openly contracting for themselves and in their own names”).
Furthermore, the parties’ dispute about whether the Waivers in the Millennium/CBT Agreement were also made with respect to Cosentini’s liability in the NCCLP/Cosentini Agreement is of little consequence to Federal’s ability to recover from Cosentini under these circumstances. Even assuming that the Waivers applied to Cosentini as they did to CBT, Federal may recover damages associated with Cosentini’s negligent violation of a statutoiy duty in the discharge of its engineering services for the construction project on the Properly. See Henry, 353 Mass. at 511.
As the Waivers do not prevent Federal’s recovery from either of the defendants, the Court concludes that genuine issues of material fact remain as to whether the defendants negligently acted in violation of statutoiy duties in the discharge of their services and whether such negligence proximately caused the damage to the Property. The defendants’ motion for summary judgment and separate and final judgment must be DENIED.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment and separate and final judgment be DENIED.

There has been only one Complaint filed by the plaintiff in this case. There are three counts still viable: one against each of the three defendants. In each count, it is alleged that the damage “was caused by and resulted from the grossly negligent, careless and/or reckless acts and/or omissions” of each defendant. See Paragraph Nos. 21, 24, and 27. However, each of the three counts is captioned “Negligence.” While Mass.R.Civ.P. 8 follows the Federal Rules and requires “notice pleading,” the Complaint seems to be confusing and leaves much to be desired. This Court construes the language above as follows:
1. “gross negligence” as it is usually used;
2. “careless” as being a negligence claim;
3. “reckless acts and/or omissions” as being a willful, wanton or reckless claim.
However, for purposes of this motion, the parties have agreed to limit the question before the Court to whether certain waivers of liability and subrogation in an agreement between Millennium and CBT exculpate the defendants from liability for ordinary negligence only. Therefore, the Court will restrict its discussion to a negligence claim only.

Article 9.4 of the Millennium/CBT Agreement states, in part:
The Owner and Architect waive all rights against each other and against the Construction Manager, Contractors, and the consultants, agents and employees of any of them for damages, but only to the extent covered by . . . insurance during constmction, except such rights as they may have to the proceeds of such insurance as set forth in the . .. [General Conditions for the Contract for Constmction] . . . Notwithstanding the foregoing, the Owner will not modify the subrogation provisions applicable to the Owner and Architect under [the General Conditions for the Contract for Constmction] in a manner that prejudices the Architect’s rights without the Architect’s review and approval. The Owner and Architect each shall require similar waivers from their Constmction Manager, Contractors, consultants, agents, and persons or entities awarded separate contracts administered under the Owner’s own forces.
Article 11.3.7 of the General Conditions for the Contract for Constmction (AIA Document A201/CMa) states:
The Owner and Contractor waive all rights against each other and against the Constmction Manager, Architect, Owner’s other Contractors and own forces described in Article 6, if any, and the subcontractors, sub-subcontractors, consultants, agents and employees of any of them, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as the Owner and Contractor may have to the proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Constmction Manager, Con-stmction Manager’s consultants, Architect, Architect’s consultants, Owner’s separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of the other parties enumerated therein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.
Furthermore, Article 1.1.2 of the Millennium/CBT Agreement incorporates by reference the Standard Form of Agreement Between Owner and Construction Manager (AIA Document A201/CMa). Article 10.4 of that document states:
The Owner and Constmction Manager waive all rights against each other and against the Contractors, Architect, consultants, agents and employees of any of them, for damages, but only to the extent covered by property insurance during constmction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201/CMa, General Conditions of the Contract for Constmction, Constmction Manager Adviser Edition, current as of the date of this Agreement. The Owner and Constmction Manager each shall require similar waivers from the Contractors, Architect, consultants, agents and persons or entities awarded separate contracts administered under the Owner’s own forces.

Massachusetts joins other jurisdictions in adhering to this principle. See McCarthy v. National Ass’n for Stock Car Auto Racing, Inc., 226 A.2d 713, 715 (N.J. 1967), quoting Boyd v. Smith, 94 A.2d 44, 46 (Pa. 1953) (“[P]ublic policy does not permit an individual to waive the protection which [a] statute is designed to afford him”); Weirick v. Hamm Realty Co., 228 N.W. 175, 176-77 (Minn. 1929), quoting Buck v. Walker, 132 N.W. 205, 207 (Minn. 1911) (public policy requires contracts to be enforced, except where doing so would “contravene public right or the public welfare," including where “the *476 contract would relieve [a party] from liability for the consequences of a breach of some duty imposed by law”).

Relevant factors include:
(1) common ownership; (2) pervasive control; (3) confused intermingling of business activities, assets or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) nonpayment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) non-functioning of officers and directors; (11) use of corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.
Commonwealth Aluminum Corp., 980 F.Sup. at 606. See M.C.K., Inc., 432 Mass. at 555-57.

The Court notes that Millennium is a Limited Liability Corporation rather than a traditional corporation.