Lauriat, Peter M., J.
The plaintiffs, Arnica Mutual Insurance Company (“Arnica”), Clarendon National Insurance Company (“Clarendon”), and Norfolk & Dedham Mutual Fire Insurance Company (“Norfolk”) are insurance providers for Robert and Nancy Clancy (“the Clancys”), Marina Point Trust (“Marina Point”), and Robert Kaufman (“Kaufman”), respectively. The Clancys and Kaufman are owners of condominium apartments located at 1001-2001 Marina Drive, Quincy, Massachusetts. Marina Point operates the condominium property. The plaintiff insurers brought this action against the defendants, Bergmeyer Associates, Inc. (“Bergmeyer”), an architectural firm, and Eastern Exterior Wall Systems (“Eastern”), a contractor, alleging that on December 21, 2004, and again on January 19, 2005, defendants’ negligence caused pipes to freeze and sprinklers to burst, damaging the insureds’ condominium property.
In the plaintiffs’ amended complaint, Clarendon alleges negligence against Eastern with respect to both the December 21, 2004 and the January 19, 2005 incidents (Counts I and II respectively). Clarendon also alleges negligence against Bergmeyer with respect to both the December 21,2004 and the January 19, 2005 incidents (Counts III and IV respectively). In addition, as to the January 19, 2005 incident, Norfolk alleges negligence against both Eastern and against Bergmeyer (Counts v. and VI respectively). And finally, Arnica alleges negligence against Eastern and Bergmeyer (Counts VII and VIII) as to the January 19, 2005 incident. This matter is before the court on Bergmeyer’s and Eastern’s motions for summary judgment on all counts. For the following reasons, Bergmeyer’s motion for summary judgment is allowed in part and denied in part, and Eastern’s motion for summary judgment is denied.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
In October 2003, Marina Point retained Bergmeyer to oversee the exterior wall repair of two condominium buildings. Prior to the start of construction, Bergmeyer and Marina Point executed a contract (“the Bergmeyer Contract”) that governed the parties’ obligations with respect to the project. Section 1.3.7.4oftheBergmeyer Contract contained a waiver of subrogation provision that stated: “To the extent damages are covered by property insurance during construction, the Owner and the Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages . . ,”[1]
Thereafter, Eastern was hired as the contractor to perform the exterior wall repair. Prior to the start of construction, Marina Point and Eastern executed a contract (“the Eastern Contract”) that also contained waiver of subrogation provision, which stated that “(t]he Owner and Contractor waive all rights against (1) each other and any of their subcontractors, subcontractors, agents and employees, each of the other ... for damages caused by fire or other perils to the extent covered by properly insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work . . .”[2] Paragraph 11.3.1 of the Eastern Contract required Marina Point to obtain insurance to cover the exterior wall repair.[3] Pursuant to Paragraph 11.3.1, Marina Point purchased two insurance policies from Travelers Insurance Company (“Travelers”).[4]
In October 2003, work began on the condominiums’ exterior walls. On December 21, 2004, pipes in the condominiums froze, causing sprinklers inside several residential units to burst. An employee of Bergmeyer, John Taylor (“Taylor”), inspected the Property and determined that the freeze was caused by insufficient insulation along the exterior walls.[5] Thereafter, Eastern performed remedial work. Nevertheless, on January 19, 2005, the sprinkler heads froze again, causing water to damage the Clancys’ and Kaufman’s condominium units. Taylor determined that the exterior walls were still insufficiently insulated and that Eastern had performed poor remedial work prior to the January 19, 2005 sprinkler freeze. Thereafter, the Clancys’ property insurer, Arnica, paid them for damage caused by the January 19, 2005 sprinkler freeze. Similarly, Kaufman’s property insurance provider, Norfolk, compensated him for the January 19, 2005 sprinkler freeze.[6] Finally, Clarendon, Marina Point’s *559 property insurer, compensated Marina Point for both the December 21, 2007 and the January 19, 2005 sprinkler freezes.[7]
On September 29, 2005, Clarendon and Norfolk, as subrogees, brought this negligence action against Bergmeyer and Eastern. On February 5, 2007, the court granted the plaintiffs’ motion to amend the complaint to include Arnica as a plaintiff. On August 13, 2007, Bergmeyer moved for summary judgment pursuant to Mass.R.Civ.P. 56(c). And on December 12, 2007, Eastern moved for summary judgment pursuant to Mass.R.Civ.P. 56(c).
DISCUSSION
Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). It is the moving party’s burden to affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles him to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
I. Waiver of Subrogation Claims
In support of their summary judgment motions, Bergmeyer and Eastern assert that the presence of a valid waiver of subrogation bars each of the plaintiffs’ negligence claims. In general, Massachusetts law recognizes waivers of subrogation in construction contracts. See, e.g., Haemonetics Corp. v. Brophy & Phillips Co., Inc., 23 Mass.App.Ct. 254, 258 (1986) (because the insurance policy made specific reference to the possibility of waiver by the insured, the insured’s execution of a waiver of subrogation barred the insurer’s negligence claim). Waiver of subrogation provisions are useful in construction projects because they avoid disruption and disputes between the parties by eliminating the need for litigation while protecting the parties from loss by bringing all property damage under the builder’s property insurance. Id., citing Tokio Marine & Fire Ins. Co. v. Employers Ins., 786 F.2d 101, 104 (2d Cir. 1986). In these causes, the subrogee stands in the shoes of the subrogor possessing equivalent rights, the rights of the subrogee being no greater than those of the subrogor. Liberty Mut. Ins. Co. v. Nat’l Consol. Warehouses, Inc., 34 Mass.App.Ct. 293, 297 (2003), citing Home Owners’ Loan Corp. v. Baker, 299 Mass. 158, 162 (1937).
A. Clarendon’s Claims against Bergmeyer
For the purposes of Bergmeyer’s motion for summary judgment, the sole point of contention is the enforceability of the waiver of subrogation that Marina Point executed.[8] In support of its motion, Bergmeyer contends that the subrogation waiver explicitly bars Clarendon’s negligence claim. Conversely, Clarendon argues that because Bergmeyer allegedly violated provisions of the Massachusetts Building Code (780 Code. Mass. Regs, et seq. and G.L.c. 143, §3A), by failing to sufficiently oversee the contractor, Eastern, public policy demands that the subrogation waiver be voided.[9]
Arguing that the subrogation waiver is void, Clarendon cites Federal Insurance Co. v. CBT/Childes Bertman Tseckares, Inc., Civil No. 04-05022G (Suffolk Super. Ct., May 25, 2007) (Connolly, J.), 2007 Mass. Super. LEXIS 153 [22 Mass. L. Rptr. 472] [“CBT/Childs"), where the court was faced with facts similar to the present claim. There, the plaintiff, who insured property that was damaged in a fire, alleged that the defendants negligently installed a sprinkler system in violation of provisions of the Massachusetts Building Code. Id. On a motion for summary judgment, the defendants argued that a waiver of subro-gation executed by the insured barred the plaintiffs claims. Id. However, the court held the waiver of subrogation did not exempt the defendants from liability for negligent violations of a statutory duty. Id. at *10.
Despite the CBT/Childs court’s holding, Clarendon’s argument fails because the court there based its decision primarily on Federal Insurance Co. v. Cogswell Sprinkler Co., Inc., 2005 U.S.Dist. LEXIS 45287 (D.Mass. Feb. 15, 2005), which involved a full liability release, not a waiver of subrogation. Id. In Massachusetts, it is well settled that a release from liability “cannot serve to shield the defendant from responsibility for violation of a statutory duty.” See, e.g., Henry v. Mansfield Beauty Acad., Inc., 353 Mass. 507, 510-11 (1968) (where the defendant violated its statutory duty to register its students, the release signed by the plaintiff was void, allowing the plaintiff to assert a negligence claim). Likewise, such an agreement cannot exempt a wrongdoer from liability for grossly negligent conduct. See, e.g., Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 19 (1997) (for public policy reasons a liability release signed by the plaintiff did not exempt the defendant from liability for grossly negligent conduct). However, a waiver of subrogation is unlike an ordinary release from liability because the former guarantees that the injured party will be compensated and the latter does not. See Great N. Ins. Co. v. Architectural Env’t, Inc., 2007 U.S.Dist. LEXIS 76003, *58 (D.Mass. Aug. 28, 2007) (a subrogation waiver barred the plaintiffs claim that the defendant was grossly negligent); see also Penn Ave. Assoc. v. Century *560 Steel Erectors, Inc., 798 A.2d 256, 259 (Pa.Super.Ct. 2002) (waivers of subrogation are a matter of contract and thus the public policy concerns relating to exculpatory clauses are inapplicable).
Here, Clarendon’s allegation that Bergmeyer violated provisions of the Massachusetts Building Code is insufficient to avoid enforcement of the subrogation waiver. Evidence that Bergmeyer violated provisions of the Massachusetts Building Code would simply show that it acted negligently. However, the contractual waiver of subrogation contained in the Bergmeyer Contract specifically waives the parties’ ability to bring negligence claims against one another. Allowing Clarendon to avoid the subrogation-waiver simply by alleging Bergmeyer committed statutory violations would render that contractual provision meaningless.[10] Moreover, because the injured party, Marina Point, was compensated for its loss, public policy does not demand that the court invalidate the contractual waiver of subrogation. See Penn Ave. Assoc., 798 A.2d at 259. Therefore, the subrogation waiver contained in the Bergmeyer contract is enforceable, even though Clarendon alleges Bergmeyer violated the Massachusetts Building Code.
The court must next address whether the subrogation waiver is enforceable against Clarendon without its notice or consent.[11] Massachusetts has yet to answer this question and other jurisdictions are in conflict on this issue. See Allianz Ins. Co. of Canada v. Structure Tone (UK), Inc., & Eagle Dismantling Corp., 2005 U.S.Dist. LEXIS 44839, *13-*15 (S.D.N.Y. 2005) (holding that even in the absence of the insurer’s knowledge or consent, in New York waivers of subro-gation are enforceable), citing Cont’l Ins. Co. v. Boraie, 672 A.2d 274, 277 (N.J.Super.Ct. 1995) (holding that in New Jersey, waivers of subrogation are enforceable even if executed without the insurer’s knowledge or consent). But see ICC Indus., Inc. v. GATX Terminals Corp., 690 F.Sup. 1282, 1286 (S.D.N.Y. 1988) (holding that an insurer could not be bound to a waiver of subrogation that it was not a party to or aware of).
Nevertheless, as one court noted,
(i)nsurers can protect .themselves by (1) inserting an exclusion into their policies that permits the insurer to deny coverage if an insured waives the insurer’s subrogation rights, (2) raising premiums to offset outlays incurred from the loss of their subrogation rights, (3) investigating whether a potential insured has already waived any subrogation rights, (4) requiring insureds to warrant at the time a policy is issued that the insured has not, and will not, waive the insurers’ subrogation rights, and (5) obtaining reinsurance to cover any waiver of sub-rogation rights.
Bakowski v. Mountain States Steel, Inc., 52 P.3d 1179, 1186 (Utah Sup.Ct. 2002) (holding that an insured may defeat the insurer’s right of subrogation by entering into an agreement of release with a third party); see also Acadia Ins. Co. v. Buck Constr. Co., 756 A.2d 515, 518 (Me.Sup.Ct. 2000) (holding that where an insurance policy specifically mentions the insured’s power to waive subrogation, the risk the insurer will not be able to recover form the wrongdoer is presumably included in the premium).
Here, there is nothing to indicate that the waiver of subrogation contained in the Bergmeyer Contract is not enforceable against Clarendon, given the numerous precautions Clarendon could have taken to protect its interest. As an entity in the business of providing insurance, Clarendon should have considered the possibility that Marina Point would exercise its right to waive subrogation when it established Marina Point’s insurance premium.[12] Thus, summaiy judgment in favor of Bergmeyer on Counts III and IV of the plaintiffs’ complaint is appropriate.
B. Clarendon’s Claims against Eastern
For the reasons set forth above, the subrogation waiver contained in the Eastern Contract is also enforceable. However, it is only enforceable with respect to insurance obtained pursuant to the Eastern Contract or existing insurance applicable to “the Work.” In contrast to the Bergmeyer Contract, whose subrogation waiver applies broadly to “damages [that] are covered by property insurance during construction,” the Eastern Contract subrogation waiver applies to damages “covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work.”
Here, nothing in the summaiy judgment record indicates the Clarendon property insurance policy was applicable to “the Work” as defined by the Eastern Contract. Neither party disputes that the Clarendon property insurance policy was not obtained pursuant to Paragraph 11.3.1. In fact, Marina Point specifically complied with Paragraph 11.3.1 by obtaining the two Travelers insurance policies. And following the two sprinkler freezes, Clarendon compensated Marina Point for damage to the condominium units, not for replacement of the exterior walls. Moreover, Eastern’s sole argument in support of its motion is that generally subrogation waivers are enforceable. Eastern fails to assert that the Clarendon property insurance policy is applicable to “the Work” in the first place. Therefore, while the subrogation waiver contained in the Eastern Contract would be enforceable against Travelers, because the Clarendon insurance policy is inapplicable to “the Work,” summary judgment in favor of Eastern on Counts I and II is inappropriate.
II. Arnica’s and Norfolk’s Claims against Bergmeyer and Eastern
In their summaiy judgment motions, the defendants assert that the subrogation waivers contained in the Bergmeyer Contract and the Eastern Contract also bar Arnica’s and Norfolk’s negligence claims. However, the defendants fail to identify any legal authority to support this assertion. Here, Arnica and Norfolk are *561 the subrogees of the Clancys and Kaufman respectively. And neither the Clancys nor Kaufman signed a waiver of subrogation. The court is not aware of any legal theory that would curtail Arnica’s and Norfolk’s subrogation rights and bind them to the waivers executed by Marina Point. Thus, as neither the Clancys’ nor Kaufman’s rights have been diminished, Arnica and Norfolk are free to assert negligence claims against the defendants. Accordingly, summary judgment in favor of the defendants on Counts V, VI, VII, and VIII is inappropriate.
ORDER
For the foregoing reasons, as to Counts I, II, V, and VII, Eastern’s motion for summary judgment pursuant to Mass.R.Civ.P. 56(c) is DENIED. As to Counts III and IV, Bergmeyer’s motion for summary judgment pursuant to Mass.R.Civ.P. 56(c) is ALLOWED. As to Counts VI and VIII, Bergmeyer’s motion for summary judgment is DENIED.

The parties’ contract incorporated the American Institute of Architects (“AJA”) standard construction contract 1987 edition.

The term “Work” was defined in Paragraph 1.1.3 of the Eastern Contract, as “the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor’s obligations . . .”

Paragraph 11.3.1 of the Eastern Contract states that “[ujnless otherwise provided, the owner shall purchase and maintain, in a company or companies ... property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site on a replacement cost basis . . . Such property insurance shall be maintained . . . until final payment has been made . . .”

The two Travelers insurance policies had effective dates of October 28, 2004 and June 3, 2004.

Taylor added that poor construction contributed to the deficient insulation.

The parties do not dispute that the Clancys’ Arnica insurance policy and Kaufman’s Norfolk insurance policy were unrelated to the exterior wall construction.

The parties do not dispute that the Clarendon insurance policy predated the defendants’ agreements with Marina Point.

Clarendon does not dispute that Marina Point’s property insurance policy was applicable to the damage caused by the two sprinkler freezes.

During construction an architect must “[b]e present at intervals appropriate to the stage of construction to become, generally familiar with the progress and quality of the work and to determine, in general, if the work is being performed in a manner consistent with the constmction documents.” 780 Code. Mass. Regs. §116.2.2(3).

 Attempting to avoid a waiver of subrogation, one could always allege some statutory violation.

This issue was not briefed by the parties but was raised by the court during the hearing on the defendants’ motions.

Moreover, Clarendon does not contend that the Marina Point’s property insurance policy forbade it from exercising its right to waive subrogation.